

Colin Prince
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Christopher Merrill

# United States District Court
Honorable Wm. Fremming Nielsen

| United States, | No. 19-cr-152-WFN |
|---|---|
| Plaintiff, | Sentencing Memorandum |
| v. | |
| Christopher Merrill, | |
| Defendant. | |

# I. Introduction

The Court has seen this case before and will see it again—another mentally-ill defendant suffering addiction issues downloaded immensely disturbing images. And Mr. Merrill justified his downloading the way virtually every child-pornography downloading defendant does: he told himself nobody would know. He never laid a hand on anyone. He never took an inappropriate photograph or filmed an inappropriate video. Mr. Merrill believed he was indulging a fantasy—a twisted fantasy, to be sure—without harming anyone else.

His actions were illegal, and Mr. Merrill will receive a harsh sentence. And the mandatory minimum (a poor name for a sentence that is anything but minimal) is harsh.

In contrast, the government apparently intends to recommend a guideline sentence (as the plea agreement reflects).[1] In doing so, the government will rightly note that Mr. Merrill did this twice. He downloaded child pornography, then federal agents executed a search warrant in February 2018, and then a year and a half later, before being charged, Mr. Merrill did it again.[2] (It remains unclear why agents did nothing with the case for 18 months.) That fact attests to two things: (1) Mr. Merrill had no

---

[1] *See* ECF No. 64 at 7 ("The United States agrees to recommend a sentence within the advisory guideline range . . . .").

[2] *See* PSR ¶¶ 17–20.

idea how agents tracked him; and (2) Mr. Merrill didn't understand that he was harming others by downloading.

The odd thing about a guideline sentence is that not even the Sentencing Commission believes in the child-pornography guidelines anymore—the Commission itself has disavowed them.[3] And with good reason. Mr. Merrill's guideline range is 151–188 months. If Mr. Merrill had hired a hitman to kill a child rather than download images, he couldn't be sentenced to that much time—he would face a maximum of 10 years.[4] The guidelines and mandatory minimums are nothing more than the product of tough-on-crime politicians scoring political points on the backs of criminal defendants, people who will serve unjust and unnecessarily long sentences that neither rehabilitate the offenders nor aid the victims. These are the sentences that have made America the world-leader in incarcerating its own people. And we are no safer for it.

Five years is a long time. Mr. Merrill respectfully requests that the Court impose a 60-month sentence followed by 5-years supervised release.

## II. Background

Not much needs to be added to the PSR's background. Mr. Merrill's story is simple: he grew up relatively normal, athletic, with friends. But sports began to fall

---

[3] *See U.S. v. Jenkins*, 854 F.3d 181, 189–90 (2d Cir. 2017) ("the Commission has effectively disavowed § 2G2.2").

[4] *See* 18 U.S.C. § 1958.

away early, and he turned to drug use in his teens in what was most likely also the early onset of mental-health problems. Mr. Merrill has suffered nearly a decade of depression, "normalized anxiety" (i.e., he's in a constant state of panic), and schizophrenic symptoms—hearing non-existent voices in his head.[5] And like many people suffering mental-illness, he buried his symptoms in drugs (and likely exacerbated them at the same time). The most serious drug being, unsurprisingly, methamphetamine.

One notable fact arises about Mr. Merrill's drug history: he got clean from 2001 until after his divorce in 2012.[6] After his divorce, Mr. Merrill spiraled downward into daily drug use and depression and downloading.

## III. Discussion

At sentencing, courts may impose only what is necessary to achieve the Sentencing Reform Act's goals—and nothing more. *U.S. v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) ("[a] substantively reasonable sentence is one that is 'sufficient, but ***not greater than necessary***'") (quoting 18 U.S.C. § 3553(a) (emphasis added)).

### A. The child-pornography guidelines are useless.

The child-pornography guideline, § 2G2.2, isn't worth the paper it's printed on. Although guideline ranges must be considered, courts "may ***not presume*** that the

---
[5] *See* PSR ¶ 71.

[6] *See* PSR ¶ 77.

Guideline range is reasonable," *Gall v. U.S.*, 552 U.S. 38, 49–50 (2007); instead, courts are "free to make [their] own reasonable application of the § 3553(a) factors, and to *reject* (after due consideration) the advice of the Guidelines"—which should not have "any thumb on the scales." *Kimbrough*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring) (emphasis added). If there was ever a guideline meriting rejection (and there are more than a few), it is § 2G2.2.

It is based on nothing. Not research about recidivism. Not any investigation into rehabilitation. Not any considered expertise about the relative harm of the offense. Virtually every enhancement applies in every case, compelling the question: what are the enhancements distinguishing if they always apply?

Section § 2G2.2's deficiencies have not gone unnoticed by courts. The Ninth Circuit agreed in *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011), where it said "the child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role." *Id.* at 960 (quoting *Kimbrough*, 552 U.S. at 109). Thus, "district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines." *Id.* The child-pornography guidelines "have been substantively revised *nine* times during their 23 years of existence," and with "[m]ost of the revisions [] Congressionally-mandated and *not* the result of an empirical study." *Id.* at 963 (emphasis added). In other words, this guideline is based on not much at all.

The Ninth Circuit is not alone. The Second Circuit has called § 2G2.2's enhancements "run-of-the-mill" and "all-but-inherent." *See U.S. v. Jenkins*, 854 F.3d 181, 189 (2d Cir. 2017) (citing *U.S. v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010)). It is these type of baseless enhancements that cause a routine downloading-defendant "to be treated like an offender who seduced and photographed a child and distributed the photographs and worse than one who raped a child." *Id.* at 189. The Sentencing Commission has been forced by political fiat to increase these guidelines "despite often openly opposing these [c]ongressionally directed changes." *Id.* at 188. The Second Circuit put it bluntly: "the Commission has effectively disavowed § 2G2.2" which "can easily generate unreasonable results." *Id.* at 190.

Perhaps more absurd, Mr. Merrill's guideline range for *receipt* exceeds the statutory maximum for *possession*—even though nobody can intelligently explain how *receipt* differs from *possession*, the crimes are in practice indistinguishable. And that is not a defense position, that is the Sentencing Commission's position. According to the a key commission report on sexual offenses, there is "little meaningful distinction" between the two:[7]

---

[7] U.S. Sent. Comm'n, *Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal System* at 5 (Jan. 2019) (available at: https://bit.ly/31XUd5g).

> **Key Findings**
>
> 5. Although Commission analysis has demonstrated <mark>that there is little meaningful distinction between the conduct involved in receipt and possession offenses,</mark> the average sentence for offenders convicted of a receipt offense, which carries a five-year mandatory minimum penalty, is substantially longer than the average sentence for offenders convicted of a possession offense, which carries no mandatory minimum penalty.

Despite the lack of any meaningful difference between *possession* and *receipt*, Mr. Merrill faces a range for the latter that would be illegal under the former.

These sorts of arbitrary numbers are offensive to any reasoned system of law and punishment. The fact that § 2G2.2 continues to haunt the guideline manual speaks only to the Sentencing Commission's institutional paralysis (or its remarkably DOJ-friendly history).

### B. The Sentencing Reform Act favors a 60-month sentence.

Lengthy prison sentences do not deter crime. So says DOJ. In 2016, the National Institute of Justice, an arm of DOJ, published research findings entitled *Five Things About Deterrence*, which concluded: "Increasing the severity of punishment does little to deter crime."[8] The reason is common sense: "[laws] increasing the severity of

---

[8] Dept. of Justice, Nat'l Instit. of Just., *Five Things About Deterrence* (May 2016) (available at: https://bit.ly/2XA9g2s) ("NIJ's 'Five Things About Deterrence' summarizes a large body of research related to deterrence of crime into five points.").

punishment are ineffective partly because criminals know little about the sanctions for specific crimes."[9]

While harsh sentences generate no deterrence, there is a way to deter offenders: probation. It is the "certainty of being caught [that] is a vastly more powerful deterrent than the punishment,"[10] and nothing provides more certainty of being caught than a probation officer that can search your home or phone. Probation works. Prison does not.

Judges seem to agree. In 2019, judges gave below guideline sentences in nearly 70% of cases.[11]

Table 31

SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE
BY TYPE OF CRIME[1]
Fiscal Year 2019

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | VARIANCE | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
| TOTAL | 76,034 | 39,078 | 51.4 | 364 | 0.5 | 7,272 | 9.6 | 7,119 | 9.4 | 3,162 | 4.2 | 19,039 | 25.0 |
| Administration of Justice | 695 | 357 | 51.4 | 12 | 1.7 | 36 | 5.2 | 6 | 0.9 | 43 | 6.2 | 241 | 34.7 |
| Antitrust | 20 | 2 | 10.0 | 0 | 0.0 | 15 | 75.0 | 0 | 0.0 | 0 | 0.0 | 3 | 15.0 |
| Arson | 68 | 35 | 51.5 | 2 | 2.9 | 9 | 13.2 | 0 | 0.0 | 2 | 2.9 | 20 | 29.4 |
| Assault | 768 | 380 | 49.5 | 18 | 2.3 | 39 | 5.1 | 1 | 0.1 | 55 | 7.2 | 275 | 35.8 |
| Bribery/Corruption | 341 | 63 | 18.5 | 0 | 0.0 | 118 | 34.6 | 0 | 0.0 | 27 | 7.9 | 133 | 39.0 |
| Burglary/Trespass | 64 | 40 | 62.5 | 1 | 1.6 | 1 | 1.6 | 0 | 0.0 | 2 | 3.1 | 20 | 31.3 |
| Child Pornography | 1,368 | 413 | 30.2 | 10 | 0.7 | 30 | 2.2 | 0 | 0.0 | 95 | 6.9 | 820 | 59.9 |

---

[9] *Id.*

[10] *Id.*

[11] *See* U.S. Sentencing Commission, *Sourcebook*, Table 31 (2019) (available at: https://bit.ly/3jK0LKL).

It is no accident that, like Mr. Merrill, virtually every child-pornography download defendant that appears before the Court has mental-health issues often combined with drug use. Those ailments drive crimes of many sorts, and mental-health and drug treatment, not prison, best address the roots of crime.

A five-year sentence followed by five-years of supervision puts Mr. Merrill into the federal system for a decade. That is a sufficient penalty for his offense.

## IV. Conclusion

For the reasons above, Mr. Merrill respectfully requests a five-year sentence followed by five-years supervised release.

Dated: September 3, 2020.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Christopher Merrill

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org

# Service Certificate

I certify that on September 3, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Ann Wick.

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org
